```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MOHAMMED OMAR,

                Plaintiff,

        - against -                      MEMORANDUM AND ORDER

THE CITY OF NEW YORK, ROOSEVELT          13 Civ. 8264 (NRB)
ISLAND PEACE OFFICER DAN FLAHERTY,
Shield No. 270, in his Individual
Capacity, NEW YORK CITY POLICE OFFICERS
"JOHN DOE" 1-3, and ROOSEVELT ISLAND
PEACE OFFICERS "JOHN DOE" 1-5,

                Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Mohammed Omar brings this action against the City of New York (the "City"), Roosevelt Island Peace Officer Dan Flaherty ("Flaherty"), and several unnamed New York City and Roosevelt Island police officers, seeking damages pursuant to 42 U.S.C. § 1983 and state law for claims arising out of his allegedly unlawful arrest and prosecution.  The City has moved to dismiss the claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated herein, the City's motion is granted.

### BACKGROUND

At 1:15 a.m. on December 9, 2012, plaintiff was arrested by Roosevelt Island Peace Officers at his place of employment at Roosevelt Island.  Am. Cmplt. ¶ 13.  These officers allegedly

"approached plaintiff [without provocation], slammed him against a refrigerator, handcuffed his arms tightly behind his back, and struck him about the legs repeatedly with a night stick." Id. ¶ 14.

The City's records provide a different picture of the altercation. According to the Arrest Report, at the time of the occurrence, plaintiff had "refused several lawful orders to disperse and continued to move toward [the arresting officer], placing [the arresting officer] in fear for his safety." Hayes Decl., Ex. B. More specifically, according to the Criminal Complaint, when Flaherty attempted to arrest a separately-charged defendant, Francis, for causing a public disturbance by "standing in front of the above location singing loudly," "mak[ing] obscene gestures towards him and yell[ing] obscene language loudly," plaintiff "pull[ed] SPO Flaherty away from defendant Francis" and "place[d] his body between SPO Flaherty and defendant Francis, preventing SPO Flaherty from completing the arrest." Hayes Decl., Ex. C. The officer consequently informed plaintiff that he was under arrest, at which point plaintiff "began flailing his arms and kicking his legs in an attempt to resist arrest." Hayes Decl., Ex. B; see also Hayes Decl., Ex. C.

After his arrest, plaintiff was transported by the Roosevelt Island officers to a City police precinct and spent approximately thirty-six hours in custody. Am. Cmplt. ¶¶ 19, 24. He was

2

subsequently charged with Obstructing Governmental Administration in the Second Degree and with Resisting Arrest, allegedly as a result of defendants having "filled out false and/or misleading police reports and forwarded them to prosecutors at the New York County District Attorney's Office."  Id. ¶ 20; see also id. ¶¶ 22-23 (alleging that defendants "gave false and misleading testimony" by stating "that plaintiff interfered with the defendants' arrest of another individual by pulling Officer Flaherty away from a separately apprehended individual, and flailing his arms to resist arrest").  Plaintiff spent approximately seven months defending against these charges before they were dismissed on July 8, 2013.  Id. ¶¶ 25-26.  Shortly thereafter, on July 22, 2013, plaintiff served a notice of claim on the City, and a hearing pursuant to General Municipal Law § 50-h was held on October 8, 2013.  Id. ¶¶ 66, 68.

On November 19, 2013, plaintiff filed an initial complaint against the City, the Roosevelt Island Operating Corporation, Flaherty in both his individual and official capacities, and various John Doe officers.  On January 23, 2013, the Court signed a stipulation dismissing the case against the Roosevelt Island Operating Corporation and against Flaherty in his official capacity, and it granted plaintiff leave to file an amended complaint in light of the stipulation and several outstanding and anticipated motions to dismiss by Flaherty and the City.

3

Consequently, on February 11, 2014, plaintiff filed an amended complaint against the City, Flaherty in his individual capacity, and various John Doe officers, asserting claims under Section 1983 for false arrest, malicious prosecution, excessive force, and municipal liability, and under state law for malicious prosecution and negligent hiring / training / supervision / retention.

The City moved to dismiss the claims against it on July 17, 2014,[1] and the motion was fully briefed on August 13, 2014.

## DISCUSSION

**I. Motion to Dismiss**

   **A. Legal Standards**

A court ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor.  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d. Cir. 1996).  Nevertheless, a

---

[1] Plaintiff's Section 1983 claim for excessive force does not appear to be directed at the City, and neither party's motion papers have addressed the issue.  See Am. Cmplt. ¶ 50 ("The force employed by the individually named defendants was unreasonable given the facts and circumstances prevailing at the time and place of the above described incident.") (emphasis added).  We therefore do not reach this claim.

4

plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Iqbal, 556 U.S. at 684 (internal quotation marks omitted).

When deciding a motion to dismiss, in addition to the complaint and any exhibits or documents incorporated therein by reference, a court may "properly consider matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Halebian v. Berv, 644 F.3d 122, 130 n. 7 (2d Cir. 2011) (internal quotation marks and citations omitted). Where a "court takes judicial notice, it does so in order to determine what statements [the public records] contained [and] not for the truth of the matters asserted." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted). Specifically, judicial notice may be taken of "relevant matters of public record," Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012), such as "arrest reports, criminal complaints, indictments,

and criminal disposition data."  Wims v. New York City Police Dep't, 10 Civ. 6128(PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011); see also, e.g., Betts v. Shearman, 12 Civ. 3195 JPO, 2013 WL 311124, at *3 (S.D.N.Y. Jan. 24, 2013) aff'd, 751 F.3d 78 (2d Cir. 2014); Awelewa v. New York City, 11 Civ. 778 NRB, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012).

Accordingly, we take judicial notice here of the New York City Police Department Arrest Report, Criminal Complaint, and Roosevelt Island Incident Report attached as exhibits by the City. In addition, we take notice of the fact that Roosevelt Island Peace Officers, as officers of the Roosevelt Island Public Safety Department ("RIPSD"), are employed by the Roosevelt Island Operating Corporation, a state agency, and not by the City.  See http://rioc.ny.gov/psd.htm ("The [RI]PSD is a division of the Roosevelt Island Operating Corporation (RIOC), the state public benefit agency . . . ."); id. (locating RIPSD webpage on RIOC website with "New York State" header and "State of New York" seal); see also Jones v. Roosevelt Island Operating Corp., 13 Civ. 2226 (JSR), 2013 WL 6504428, at *2 (S.D.N.Y. Dec. 11, 2013) (concluding that "RIOC, RIPSD, and the officers sued in their official capacities are entitled to the protections given to New York State"); Chafetz v. Roosevelt Island Operating Corp., 97 Civ. 0761 (NRB), 2000 WL 1277337 (S.D.N.Y. Sept. 8, 2000) (concluding that

RIOC, as a "state-created entity," is "like an arm of New York State").

**B. Section 1983 Claims**

   **1. False Arrest**

A claim of false arrest under Section 1983 "is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Both causes of action require a plaintiff to demonstrate "inter alia, that the defendant intentionally confined [plaintiff] without his consent and without justification." Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (quoting Weyant, 101 F.3d at 852).

"Probable cause is a complete defense to constitutional claims of false arrest and false imprisonment." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (internal citations omitted). Probable cause will be found where an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "When information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (internal citations omitted). "[It does not] matter

7

that an investigation might have cast doubt upon the basis for the arrest," id., as "[w]hen determining whether probable cause exists courts must consider those facts available to the officer at the time . . . ." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006).

Here, the City's confinement of plaintiff was supported by probable cause and therefore does not give rise to a claim of false arrest.  The account of the altercation given by RIPSD officers--in which plaintiff interposed himself to obstruct the arrest of another and then resisted his own arrest--provided City officers with "reasonably trustworthy information" indicating that plaintiff had committed a crime, and therefore with sufficient probable cause to process and hold him.  While plaintiff vociferously protests the accuracy of the Roosevelt Island officers' statements, he provides no facts suggesting that the City officers knew or should have known that the Roosevelt Island officers' statements were false.  See, e.g., Lederman v. Benepe, 12 Civ. 6028 (PGG), 2014 WL 1318356, at *11 (S.D.N.Y. Mar. 28, 2014) ("The fact that Plaintiff alleges that all of [defendant's] statements to the police were false does not change the analysis unless the officers knew that [those] statements were false . . . [and t]here is no such allegation in the Amended Complaint."); Guthrie v. U.S. Gov't, 11 Civ. 211 PKC, 2011 WL 832251, at *3 (S.D.N.Y. Mar.2, 2011) ("Plaintiff makes no allegation that the arresting officer knew, or had reason to know, that the accusations

8

of the complaining witness were false and therefore fails sufficiently to allege that the officer did not have probable cause to arrest him."). Thus, the City had probable cause for plaintiff's confinement and plaintiff's claim against the City for false arrest is dismissed.

### 2. Malicious Prosecution

"[T]o state a § 1983 claim for malicious prosecution, a plaintiff must show: '(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice,' together with either an arrest made pursuant to a warrant--i.e. legal process, or a 'post-arraignment deprivation of liberty.'" Betts v. Shearman, 12 Civ. 3195 JPO, 2013 WL 311124, at *11 (S.D.N.Y. Jan. 24, 2013) aff'd, 751 F.3d 78 (2d Cir. 2014) (quoting Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995)).

As with a false arrest claim, the existence of probable cause is a complete defense to a claim of malicious prosecution. Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Moreover, "[i]f probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 F. App'x 48, 50 (2d Cir. 2007). See also Allen v. City of New

9

York, 480 F. Supp. 2d 689, 714-15 (S.D.N.Y. 2007) ("[A]bsent intervening circumstances that could serve to 'dissipate' the original rationale for the arrest," where the crime for which the plaintiff had been arrested is the same as the crime for which the plaintiff is then prosecuted, the existence of probable cause for the arrest can presumptively demonstrate probable cause for the prosecution."); Michaels v. City of New York, 10 Civ. 2666 (SHS), 2011 WL 570125, at *6 (S.D.N.Y. Feb. 16, 2011) (finding no malicious prosecution where "[t]he City Defendants discovered no additional facts between the time of Michaels' arrest for possession of a controlled substance and the commencement of the prosecution").

While plaintiff insists that there was no probable cause to initiate or continue proceedings against him, and accuses the defendants, including City officers, of "misrepresent[ing] and falsif[ying] evidence" and "with[olding] exculpatory evidence from the District Attorney," Am. Cmplt. ¶¶ 38-42, these conclusory allegations alone are inadequate to support an inference that an intervening discovery or act of malfeasance dissipated the probable cause that existed for his confinement. See, e.g., Jackson v. Cnty. of Rockland, 450 F. App'x 15, 18-19 (2d Cir. 2011) ("[W]hile the second amended complaint alleges that the defendants 'falsified evidence' and conducted 'illegal surveillance,' nowhere does the complaint specify the actual evidence Jackson believes

10

was falsified, why she believes the surveillance was illegal, or how either was used to convict her at trial. As these assertions lack any factual foundation, they are merely conclusory allegations 'masquerading as factual conclusions,' which are insufficient to defeat a motion to dismiss."); Coakley v. 42nd Pct. Case 458, 08 Civ. 6206 (JSR), 2009 WL 3095529, at *7 (S.D.N.Y. Sept. 28, 2009) (noting that allegations that defendants "fabricated the complaint report in order to procure a conviction" are "mere speculation [that one can] not credit as true" "absent specific allegations as to the circumstances of the fraud, such as what information [was] altered and when this occurred"). Accordingly, plaintiff fails to state a claim against the City for malicious prosecution under Section 1983.

### 3. Municipal Liability

To "prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008), cert. denied 130 S. Ct. 95 (2009).

Plaintiff asserts that the City is liable pursuant to a number of alleged policies and practices, including "requiring officers to make a predetermined number of arrests and/or issue a

11

predetermined number of summonses within a predetermined time frame," "arresting individuals regardless of probable cause in order to inflate the officer's [or precinct's] arrest statistics," "detaining suspects and processing arrests without making an independent determination of probable cause," "falsifying evidence and testimony," "failing to take any measures to correct unconstitutional behavior when brought to the attention of supervisors and/or policy makers," "failing to properly train police/peace officers in the requirements of the United States Constitution," and "officers' continued application of objectively unreasonable force in effectuating arrests." Am. Cmplt. ¶¶ 56-57.

However, none of these allegations is sufficient to support plaintiff's claim for municipal liability. First, to the extent that plaintiff attempts to hold the City liable for policies resulting in his false arrest and malicious prosecution, his claim fails because we have found no underlying constitutional violation for which the City can be held liable. See, e.g., Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); Witt v. Vill. of Mamaroneck, 992 F. Supp. 2d 350, 369 (S.D.N.Y. 2014) (internal quotation marks omitted) ("When a district court concludes that

12

there is no underlying constitutional violation, it need not address the municipal defendants' liability under Monell.").

Second, to the extent that plaintiff seeks to hold the City liable for policies or practices with respect to his underlying excessive force claim, which we have not addressed, this claim is not adequately pled. The majority of policies and practices named by plaintiff--regarding the making or processing of arrests without probable cause and the subsequent falsifying of evidence--bear no relation whatsoever to an excessive force claim and are therefore unable to support his claim for municipal liability. See City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.") (emphasis added); see also, e.g., Escobar v. City of New York, 766 F. Supp. 2d 415, 419 (E.D.N.Y. 2011) ("[E]ven if the policy plaintiff sketches out in his complaint and motion papers existed, Escobar's Monell claim would necessarily fail because there is no link between the policy alleged the officers' conduct in this case.").

By contrast, the only alleged policies or practices that could be causally linked to the use of excessive force are the City's "fail[ure] to take any measures to correct unconstitutional behavior when brought to the attention of supervisors," its

13

"fail[ure] to properly train police/peace officers in the requirements of the United States Constitution," and its "officers' continued application of objectively unreasonable force in effectuating arrests." These allegations, supported only by plaintiff's claim that he was the subject of excessive force, are insufficient to state a claim for municipal liability. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference. Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."); see also, e.g., Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 514 (S.D.N.Y. 2008) aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012) (dismissing claim for "fail[ing] to adequately supervise [and] maintain[ing] a custom and practice that authorizes the use of excess force" where plaintiff "present[ed] no evidentiary support for the existence of such a municipal policy, custom or practice"); Bradley v. Vill. of Greenwood Lake, 376 F. Supp. 2d 528, 536-37 (S.D.N.Y. 2005) (dismissal for

14

"fail[ure] to present any evidence that the Village had a policy, custom, pattern or practice of using excessive force").

Plaintiff's municipal liability claim is therefore dismissed.

**C. State Law Claims**

**1. Malicious Prosecution**

To establish a malicious prosecution claim under New York law, as under Section 1983, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted). Because, as with his federal claim, plaintiff has not alleged facts sufficient to suggest that the probable cause for his confinement "dissipated," his state law claim for malicious prosecution is also dismissed.

**2. Negligent Hiring / Training / Supervision / Retention**

In New York, "a claim for negligent hiring, supervision or retention, in addition to the standard elements of negligence, requires a plaintiff [to] show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's

15

premises or with the employer's chattels." Doe v. Alsaud, 13 Civ. 571, 2014 WL 1345324 (S.D.N.Y. Apr. 3, 2014).

In support of this claim, plaintiff alleges only that the City "selected, hired, trained, retained, assigned and supervised all members of its Police/Peace Department, including the defendants individually named above," and that it was "negligent and careless" in doing so. Am. Cmplt. ¶¶ 85-86. These allegations not only fail to support an inference that that the Roosevelt Island officers were employed by the City--as, indeed, they are employed by the Roosevelt Island Operating Corporation and the State--but they also provide no inference that City knew or should have known about Flaherty's propensity for any alleged misconduct. As such, this claim fails.

## CONCLUSION

For the aforementioned reasons, the City's motion to dismiss is granted, and this Memorandum and Order resolves docket number 30.

**SO ORDERED.**

Dated:   New York, New York
         January 5, 2015

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE